J-A30033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.Z. | : | |
| | : | No. 909 MDA 2019 |

Appeal from the Order Entered May 3, 2019
In the Court of Common Pleas of Cumberland County Civil Division at
No(s):  2017-06066

BEFORE:   DUBOW, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED JANUARY 28, 2020**

Appellant, C.S. ("Maternal Grandmother"), appeals from the order dated

May 3, 2019, granting Appellee, K.Z. ("Father"), primary physical custody and

sole legal custody of his biological child, K.L.Z. ("Child"), born 2016, and

granting partial physical custody of Child to Maternal Grandmother.  After

careful review, we affirm.

Following Child's birth, Child and her mother lived with Maternal

Grandmother; at that time, Father was struggling with opioid addiction.  Trial

Court Opinion ("Tr. Ct. Op."), filed July 3, 2019, at 1.  On May 25, 2017,

Child's mother "died of an overdose attributable to fentanyl."  ***Id.*** at 3.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On May 31, 2017, Maternal Grandmother filed a complaint, seeking sole legal and physical custody of Child. "[I]n paragraph 6 of [Maternal] Grandmother's complaint, instead of filling in the blank with 'Father,' she characterized '[t]he relationship of defendant to [C]hild is that of <u>Sperm Donor</u>.'" *Id.* (underlining in original) (quoting Complaint, 5/31/2017, at 1). On June 22, 2017, Father and Maternal Grandmother stipulated to an order giving her shared legal custody and primary physical custody of Child. However, the relationship between the parties deteriorated, and both filed emergency petitions in August 2017. Following a hearing on October 26, 2017, the trial court granted sole legal custody and primary physical custody of Child to Maternal Grandmother and granted partial physical custody of Child to Father.

Child's paternal grandmother, P.Z. ("Paternal Grandmother"), filed a petition to intervene, and the trial court held a hearing on the petition on May 31, 2018. During the hearing, Paternal Grandmother testified that, immediately after the death of Child's mother, Maternal Grandmother did not allow her to see Child. N.T., 5/31/2018, at 9. She continued:

> I never saw [Child] until we were here in [c]ourt and we had our first weekend visit with [Child's maternal grandfather, who lives separately from Maternal Grandmother], and then [Child's maternal grandfather] let us have her at our house on Sunday with me supervising. I asked [Maternal Grandmother] multiple times and was denied, and my son was denied as well.

*Id.* At the conclusion of the hearing, the trial court granted Paternal Grandmother's petition to intervene, modified the custody order to allow

Paternal Grandmother to pick up Child at exchanges, and ordered Father's family to have an additional day-and-a-half of custodial time beginning that day to offset some of the time lost when Maternal Grandmother refused to allow them to see Child. *Id.* at 54-55.

On August 20, 2018, Father filed a petition to modify the October 2017 order, requesting sole legal and primary physical custody of Child. The trial court held hearings on Father's petition on December 19, 2018, and April 16, 2019.

During the latter hearing, Father testified that "the communications with [Maternal Grandmother] . . . since the last time [they] were in court" were "[f]ine" and that he has been "communicating" with her "directly[.]" N.T., 4/16/2019, at 23-24. "Father testified about his progress with his addiction, his work challenges and his new family (a fiancé[e], their infant, her 3 year old daughter[, A.D.,] and [Child])[.]" Tr. Ct. Op., filed July 3, 2019, at 16. Father stated that A.D. and Child have had "normal fights between sister" but that they are "the same age, one month apart, so they fight, of course, but they get along well." N.T., 4/16/2019, at 25, 37. He admitted that A.D. had bitten Child once but added that A.D. began behavioral health therapy two months ago. *Id*. at 39, 105. Father also talked about his fiancée, who cares for Child while he is working and who he said "plays a mother role very well" and "is a great mother to our other two children." *Id.* at 36. Father's testimony continued as follows:

- 3 -

A     . . . I am one hundred percent fine with giving [Maternal Grandmother] weekend visitations just like it has been, and, you know, if she were to contact me during the week asking can I get [Child] for a few hours or something, if we had nothing planned, or nothing going on, that wouldn't be an issue either.

Q     Would [Maternal Grandmother] be invited to family functions at all?

A     I could invite her.  I am not sure that she would come.

Q     Would you make sure that [Child] could be with [Maternal Grandmother] if she had family functions on her side of the family?

A     As long as nothing was going on in my family, yes.

Q     And you are okay with having an order that requires you to give her time?

A     Yes.

*Id.* at 27.   When Maternal Grandmother's attorney asked Father about a missed drug screen in February 2019, Father explained that "Restorative Sanctions" had not given him "24-hour notice" of the drug test, as the trial court had ordered them to do prior to each screen, due to his erratic work schedule.  *Id.* at 30.  He further clarified that he missed the test, as he was working a part-time second job that day, chopping wood, and that he took the test the day after receiving notice of his "no show."  *Id.*  Finally, Father testified that the parties had argued over the Child's belongings but that he "realized" that the argument was "stupid" and "pointless" and "apologized" to Maternal Grandmother.  *Id.* at 35.

Maternal Grandmother testified about "how the communication has been between [herself] and [Father,]" as follows:

[T]here isn't much communication, but what little there is, it seems to be doing quite well. [Father] will bring [Child] out whenever I pick her up, and, you know, he will give her to me, and she will say bye, and that's basically what it is. . . . There is no communication outside exchanges.

*Id.* at 55. Maternal Grandmother also presented the testimony of Esther Armstrong who was "present during all custody exchanges"; Ms. Armstrong testified that Child "has been back with bruising lately." *Id.* at 87.

On May 3, 2019, the trial court entered an order granting Father sole legal custody and primary physical custody of Child and granting Maternal Grandmother partial physical custody of Child, with visitation every Wednesday from 4:00 p.m. until 8:00 p.m. and every other weekend from Friday at 4:00 p.m. until Sunday at 6:00 p.m. On June 3, 2019, Maternal Grandmother filed this timely[1] appeal from the trial court's custody order.[2]

Maternal Grandmother presents the following issue for our review:

Whether the [t]rial [c]ourt erred and committed an abuse of discretion in weighing the sixteen (16) custody factors in such a way as to find that it is in the best interest of the Child to award

---

[1] Thirty days after May 3, 2019, was Sunday, June 2, 2019. *See* Pa.R.A.P. 903(a) ("the notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken"). Grandmother's notice of appeal was filed the next business day thereafter and, accordingly, was timely. *See* 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday . . . such day shall be omitted from the computation.").

[2] Grandmother filed her statement of errors complained of on appeal contemporaneously with her notice of appeal, as required by Pa.R.A.P. 1925(a)(2)(i). On July 3, 2019, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a)(2)(ii).

[Father] sole legal and primary physical custody of the Child to [Father], pursuant to 23 Pa.C.S. Section 5328, et. al.

Maternal Grandmother's Brief at 6.

We begin by acknowledging our scope and standard of review in custody cases:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*D.K. v. S.P.K.*, 102 A.3d 467, 478 (Pa. Super. 2014) (quoting *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011)).

In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a). Additionally, as this is a custody order pertaining to a parent and third party, we note the applicability of 23 Pa.C.S. § 5327(b):

In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence.

*Id.* § 5327(b).

Maternal Grandmother urges this Court to reject the conclusions of the trial court about the first, third, fourth, fifth, sixth, eighth, ninth, twelfth, thirteenth, and fourteenth custody factors and, instead, to find that these ten factors are strongly in her favor. Maternal Grandmother's Brief at 13-21 (citing 23 Pa.C.S. § 5328(a)(1), (3)-(6), (8)-(9), (12)-(14)).

For the first custody factor, "[w]hich party is more likely to encourage and permit frequent and continuing contact between the child and another party[,]" 23 Pa.C.S. § 5328(a)(1), the trial court stated: "This was addressed. In short, despite his frustration over being treated as less than human, Father appears to have a much more forgiving heart than most other adults in this case." Tr. Ct. Op., filed July 3, 2019, at 24. Maternal Grandmother argues that the trial court abused its discretion in evaluating this factor, because "the trial court's observation is unsupported by the record[.]" Maternal Grandmother's Brief at 14 (citing Tr. Ct. Op., filed July 3, 2019, at 24). However, the trial court provided the following additional explanation as to why it found the first custody factor to be a "negative[]" for Maternal Grandmother:

> [W]e acknowledged that "[Maternal] Grandmother stepped in when she needed to step in, and everyone should be grateful to her for that and actually tell her that." Her role was not lost on us when we granted her more partial custody than Father's

- 8 -

counsel would have liked. But, [Maternal] Grandmother's view of stability would never permit Father to be a fulltime parent.

Tr. Ct. Op., filed July 3, 2019, at 23 (quoting N.T., 4/16/2019, at 121). Moreover, the trial court noted that Maternal Grandmother had "refus[ed] to allow [Paternal Grandmother] to have contact" with Child. *Id.* The trial court's conclusions were supported by Father's testimony that he would be "one hundred percent fine with" a court order "giving [Maternal Grandmother] weekend visitations" and with her contacting him "during the week" to arrange "a few hours" with Child, as well as his testimony that Child could attend Maternal Grandmother's family functions and that he "could invite" her to his family functions even though he was "not sure" if she would attend. N.T., 4/16/2019, at 27. The trial court's findings were further supported by Paternal Grandmother's testimony that Maternal Grandmother had refused to permit her to see Child until the court intervened. N.T., 5/31/2018, at 9. We further note that Maternal Grandmother fails to direct this Court to any evidence of record that she in any way encouraged contact between Child and Father or any of Father's family; such evidence, if it existed, could have contradicted the trial court's conclusion that this factor weighed against her. *See* Maternal Grandmother's Brief at 13-14. Ergo, we must accept the findings of the trial court about the first custody factor, as they are supported by competent evidence of record. *See D.K.*, 102 A.3d at 478.[3]

_____

[3] Maternal Grandmother concedes that the second custody factor, "[t]he present and past abuse committed by a party or member of the party's

For the third custody factor, "[t]he parental duties performed by each party on behalf of the child[,]" 23 Pa.C.S. § 5328(a)(3), Maternal Grandmother argues that the trial court failed to identify any efforts made by Father to attend Child's medical appointments or other functions while Child was in Maternal Grandmother's care. Maternal Grandmother's Brief at 14. However, the trial court explained its reasoning as follows:

> I do believe that Father has, over the course of the last couple of years, shown that he is able to fully assume all of his parental obligations, and I have no qualms under the custody factors that he can do that. To the extent that he hasn't done some things, like taking [Child] to the doctor, that's really more because [Maternal G]randmother has held on to that responsibility, not that that's a bad thing, but not that there is anything to indicate that Father is not capable of doing that. Certainly they are capable of getting the proper care and treatment for A.D., and they can do the same for [Child], and to the extent possible, obviously they may need to switch doctors, I don't know what the circumstances are there, but you have a little bit of time to work that out as well.
>
> But, clearly, under the custody law as it is, Father is ready to assume full responsibility, and [Maternal G]randmother needs to be content with not only what Father is willing to give her, but, hopefully, there will at some point in time be a true relationship between the folks in this room. As far off in the distan[ce] as that may seem, I hope that that happens for [Child]'s benefit sooner as opposed to later.

Tr. Ct. Op., filed July 3, 2019, at 19 (quoting N.T., 4/16/2019, at 123-24) (internal brackets omitted). The trial court consequently concluded: "No

---

household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child[,]" 23 Pa.C.S. § 5328(a)(2), and the related (2.1) custody factor, are not relevant to the current action, as there are no allegations of physical abuse. Maternal Grandmother's Brief at 22.

doubt, [Maternal] Grandmother performed the bulk [of the parental duties] and gets great credit, but, as stated on April 16, 2019, but for [Maternal] Grandmother excluding Father from duties such as doctor visits, he is able to perform these duties." *Id.* at 24. We "must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." *D.K.*, 102 A.3d at 478.

For the fourth custody factor, "[t]he need for stability and continuity in the child's education, family life and community life[,]" 23 Pa.C.S. § 5328(a)(4), Maternal Grandmother argues that the trial court disregarded the "significant social ties" that Child has "to [Maternal] Grandmother and her residence[,]" that deprivation of "close relationships" with her other family members will harm Child, and that her home is better suited for Child than Father's home. Maternal Grandmother's Brief at 15-16 (citations omitted). The trial court found this factor favored Father, concluding that Child "will still have a significant relationship with [Maternal] Grandmother, more so than most grandparents[] have. Thus, the benefits of a new stability for a little three-year-old will outweigh any loss." Tr. Ct. Op., filed July 3, 2019, at 24. The evidence provided that Child is not in school, and Child will continue to see Maternal Grandmother four hours every week plus at least two weekends per month. The trial court's conclusion thus is not "unreasonable as shown by the evidence of record." *D.K.*, 102 A.3d at 478.

Maternal Grandmother's entire discussion of the fifth custody factor, "[t]he availability of extended family," 23 Pa.C.S. § 5328(a)(5), is as follows:

> The fifth factor, pursuant to §5328(5), asks the Court to consider the availability of extended family. In addressing this factor, the [trial] court simply stated, "[t]his is a plus and a minus for both side[s]", but provided no explanation of as to how or why.

Maternal Grandmother's Brief at 16 (quoting Tr. Ct. Op., filed July 3, 2019, at 24). Maternal Grandmother is unclear as to what she is contesting about the trial court's conclusion; she does not dispute that both she and Father have extended family. As Maternal Grandmother provides us with no basis to find the trial court's conclusion to be unreasonable, we will not overturn it.

As to the sixth factor, "the child's sibling relationships," 23 Pa.C.S. § 5328(a)(6), Maternal Grandmother argues that the trial court "ignore[d]" testimony that A.D. and Child "are mean to each other and will bite, hit and kick one another." Maternal Grandmother's Brief at 16 (citing N.T., 4/16/2019, at 37, 39, 87). Nevertheless, the trial court did not "ignore[]" this concern but thoroughly addressed it during the April hearing and in its opinion:

> Indeed, after cutting through the testimony, the main concern about Father's ability to parent, which he and his fiancé[e] ably addressed in their testimony, was sisters being sisters. Having heard of, seen and tested Father's sobriety, we now had a four-month track record of successful parenting with no major concerns:

> > I am happy that some of the worst things I heard today were about two-and-a-half-year-olds fighting. Kids say and do things they shouldn't say and do. Sometimes it seems to come out of thin air, sometimes you don't know, but there are problems with conflicts among most children. That's not to minimize the circumstances here, and I am glad to hear that [Father's fiancée] and [Father] are addressing issues with [A.D.], and it appears that you are addressing them in an appropriate way. Head Start should be helpful in that respect, not only regarding [A.D.] but also regarding how

> you work with [Child] . . . So, I am glad that you are doing that.

Tr. Ct. Op., filed July 3, 2019, at 18 (quoting N.T., 4/16/2019, at 125-27). The trial court's conclusion was supported by Father's testimony that, while Child and A.D. may fight, they generally "get along well." N.T., 4/16/2019, at 25, 37. Additionally, Father testified that A.D. began behavioral health therapy two months prior to the April 2019 hearing. *Id*. at 105. We thereby find that, based upon the evidence of record, the trial court did not abuse its discretion when it concluded for the sixth custody factor that, "at this time, and hopefully for many years to come, Father has a good, healthy young family." Tr. Ct. Op., filed July 3, 2019, at 24; *see D.K.*, 102 A.3d at 478.[4]

As to the eighth factor, "[t]he attempts of a parent to turn the child against the other parent," 23 Pa.C.S. § 5328(a)(8), Maternal Grandmother argues that the trial court "is quick to dismiss issues that it was having with Father at the same time," such as "when Father failed to attend a court ordered drug screening" in February 2019. Maternal Grandmother's Brief at 17. The trial court referred to this factor as a "negative[]" for Maternal Grandmother, Tr. Ct. Op., filed July 3, 2019, at 23, finding:

> This is one of [Maternal] Grandmother's biggest problems, and we fear that it could grow worse. Hopefully, she has grown beyond referring to Father as "sperm donor," something Child should never hear. If she does not; however, and if the animosity turns into outright interference, [Maternal] Grandmother runs the risk of losing the custodial rights she has.

---

[4] The seventh custody factor is inapplicable, because Child is too young to have a well-reasoned preference. *See id.*

*Id.* at 25. Once again, Maternal Grandmother fails to present any evidence to this Court contradicting the trial court's conclusions about her behavior and attitude towards Father; she does not claim, let alone present any evidence, that she has not attempted to turn Child against Father. **See** Maternal Grandmother's Brief at 17. As for Father's failure to attend a court-ordered drug screening in February 2019, Father provided a thorough explanation for missing this one test, which the trial court accepted. N.T., 4/16/2019, at 30. Pursuant to our standard of review, we must accept findings of the trial court that are supported by competent evidence of record. **See D.K.**, 102 A.3d at 478.

For the ninth custody factor, "[w]hich party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs," 23 Pa.C.S. § 5328(a)(9), the trial court determined both parties are able to do so. Maternal Grandmother argues the trial court neglected to address the "concerns that exist with regard to Father entering into a new relationship and taking on the obligations of fatherhood, for not just one but three children all under the age of three." Maternal Grandmother's Brief at 18. However, her concerns are mere speculation, and

she presented no evidence that Father was overwhelmed by or unable to cope with his personal responsibilities. *See id.*[5]

For the twelfth custody factor, "[e]ach party's availability to care for the child or ability to make appropriate child-care arrangements[,]" 23 Pa.C.S. § 5328(a)(12), Maternal Grandmother contends that the "trial court fail[ed] to take into consideration the fact that [she] has a stable work history, having worked at a full-time job for fourteen years and as a result has financial options available to her [for childcare] that Father does not exhibit." Maternal Grandmother's Brief at 19 (citation to the record omitted). Her argument appears to be in response to the trial court's statement: "[Maternal] Grandmother's reliance on her parents is a concern as they age[.]" Tr. Ct. Op., filed July 3, 2019, at 25. However, this finding was not the trial court's sole consideration when comparing the parties' ability to care for Child; the trial court also stated:

> From the start, the central question was the ability of Father to provide the essential care for his daughter despite his addiction to heroin. Therefore, our efforts were focused on finding out if Father was able to parent, generally, and if he was in recovery from his addiction, specifically. In other words, our paramount concern was the safety of the [C]hild and the ability of Father to meet her needs.

*Id.* at 2. Father testified that his fiancée helps him to meet Child's needs by taking care of Child when he is working, adding that "she is a great mother to

---

[5] Grandmother presents no argument about the tenth and eleventh custody factors. *See id.* at 19, 22.

our other two children." N.T., 4/16/2019, at 36. Accordingly, contrary to Maternal Grandmother's insistence that this factor should be viewed as "a positive" in her favor, Maternal Grandmother's Brief at 19, the trial court found that "[b]oth [parties] are able to provide for [C]hild's needs if they are unavailable[,]" Tr. Ct. Op., filed July 3, 2019, at 25, and we must accept findings of the trial court that are supported by competent evidence of record. *See D.K.*, 102 A.3d at 478.

For the thirteenth custody factor, "the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another," 23 Pa.C.S. § 5328(a)(13), Maternal Grandmother argues that Father has "instigated conflict between the parties[.]" Maternal Grandmother's Brief at 20. The trial court determined that this factor "is a problem for both" parties, as there is "mistrust" between them. Tr. Ct. Op., filed July 3, 2019, at 8, 25 (citing N.T., 12/19/2018, at 26-28). However, the court was "more impressed with Father's ability to address the conflict than with" Maternal Grandmother's "inclination to do so." *Id.* at 25. The trial court's conclusions were supported by the evidence of record, including Father's testimony that the communication between himself and Maternal Grandmother has been "fine[,]" that they communicate directly, and that he apologized to her when they had an argument over Child's belongings. N.T., 4/16/2019, at 23-24, 35. The trial court's findings were further supported by Maternal Grandmother's own testimony that, although the communication between

herself and Father is minimal and usually limited to exchanges, when they do communicate, they are doing "quite well[.]" *Id.* at 55. Additionally, the only example that Maternal Grandmother's brief provides of Father "instigating conflict" is the argument over Child's belonging. Maternal Grandmother's Brief at 20 (citing N.T., 4/16/2019, at 34-35). However, her brief ignores that Father later acknowledged that the argument was "stupid" and "pointless" and that he "apologized" to her. N.T., 4/16/2019, at 35. Also, she fails to present any evidence contradicting the trial court's assessment that she has not demonstrated any ability to address the conflict between herself and Father. *See* Maternal Grandmother's Brief at 20. Accordingly, the trial court's findings as to the thirteenth custody factor were not "unreasonable as shown by the evidence of record." *D.K.*, 102 A.3d at 478.

Maternal Grandmother places great emphasis on the fourteenth custody factor, "[t]he history of drug or alcohol abuse of a party or member of a party's household[,]" 23 Pa.C.S. § 5328(a)(14). She "disagrees with the [trial] court's suggestion that the matter [of Father's substance abuse] has been handled." Maternal Grandmother's Brief at 21. She is also concerned about the safety of Child. *Id.* The trial court discussed this factor extensively, including Father's "progress with his addiction" and that, by the time it had awarded Father primary physical custody, it had "heard of, seen and tested Father's sobriety," noting that "Father had a four-month track record of successful parenting with no major concerns[.]" Tr. Ct. Op., filed July 3, 2019,

- 17 -

at 16, 18. It acknowledged that "the big issue" throughout this case was "Father's drug abuse" but discussed --

> merely because somebody is addicted to drugs does not mean that they cannot parent their children. If they are addressing their problems appropriately, I am willing to give them an opportunity to be a parent. . . . I have worked with a number of people who are addicts, some through Children & Youth Services, some through Drug Court, and I have seen people get their act together so that they are in a position to be good parents.

*Id.* at 5-6, 22 (quoting N.T., 9/25/2017, at 3). It continued:

> Although we have said much about the [subject], it is important to summarize our findings on that factor. Father has an addiction, but that is not a perpetual impediment to parenting. Through over a year of drug testing, meetings and taking life on life's terms, we "tested" Father's recovery. Because of or in spite of that, Father jumped through our hoops and maintained his sobriety. We can never be assured that there will be no relapse, but this court cannot and will not hold anyone to the standard of perfection.

*Id.* at 22-23. Overall, the trial court "was satisfied that Father had progressed to the point that he could and should assume primary custody," *id.* at 18, and this Court's "role does not include making independent factual determinations." *D.K.*, 102 A.3d at 478. Instead, we "must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." *Id.*[6]

In conclusion, the trial court found that the majority of the custody factors were of equal weight for both parties or were irrelevant to the facts of the current case. Tr. Ct. Op., filed July 3, 2019, at 24-26. Nevertheless, all of the remaining factors weighed in Father's favor and against Maternal

---

[6] Maternal Grandmother does not challenge the trial court's conclusions about the remaining custody factors. *Id.* at 22.

- 18 -

Grandmother, particularly the first, sixth, eighth, and thirteenth custody factors, as Grandmother's continued animosity towards Father has caused her to discourage Child's contact with him and with Child's half- and step-siblings, to attempt to turn Child against Father, and to maintain a high level of conflict with Father. *Id.* at 24-25 (citing 23 Pa.C.S. § 5328(a)(1), (6), (8), (13)). Furthermore, while the trial court recognized Father's history of drug abuse and, in fact, gave this fourteenth custody factor the most weight, the court also credited Father's efforts to achieve and to maintain sobriety. *Id.* at 5-6, 16, 18, 22-23, 25 (quoting 23 Pa.C.S. § 5328(a)(14); N.T., 9/25/2017, at 3). For these reasons, the trial court noted that, "even without any presumption in favor of a parent over a third party, [it] would have issued the same order." *Id.* at 23; *see also* 23 Pa.C.S. § 5327(b) (presumption in favor of parent over nonparent). In light of the deference given to the trial court with regard to issues of credibility and weight of the evidence and the statutory presumption favoring parents over third parties, we find that the trial court's holding is reasonable and supported by evidence of record. 23 Pa.C.S. §5327(b); *D.K.*, 102 A.3d at 478.

We therefore affirm the trial court's custody order of May 3, 2019. *See D.K.*, 102 A.3d at 478.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/28/2020